```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

Miguel Espaillat,                :
        Plaintiff,               :
                                 :
   v.                            :     File No. 2:04-CV-308
                                 :
United States Marshal's          :
Service,                         :
        Defendant.               :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 10)

Plaintiff Miguel Espaillat brings this action claiming that the United States Marshal's Service ("USMS") failed to provide him with adequate access to medical care while he was a pre-trial detainee. Specifically, Espaillat claims that he was assaulted by a cell-mate while incarcerated in a New Hampshire county jail, but that his injury was not treated because jail officials said he needed to be escorted by the USMS.[1] The USMS has moved to dismiss, arguing that this Court

---

[1] Espaillat has also filed suit in the United States District Court for the District of New Hampshire against three corrections officers from the New Hampshire jail. See Espaillat v. Mousseau, 2004 WL 1689746, at *1 (D.N.H. July 28, 2004). In that case, Espalllat claimed that the officers failed to protect him from the assault and denied him proper medical care thereafter. Id. Final judgment in the New Hampshire case was recently entered in favor of the defendants. See Espaillat v. Mousseau, 2005 WL 1168438, at *4 (D.N.H. May 18, 2005).

has no subject matter jurisdiction and that Espaillat has failed to state a claim for which relief may be granted. (Paper 10).  The motion to dismiss is unopposed.[2]  For the reasons set forth below, I recommend that the motion to dismiss be GRANTED, and the case be DISMISSED.

## Factual Background

For the purposes of the motion to dismiss, the allegations in Espaillat's complaint will be accepted as true.  Espaillat claims that while he was a federal pre-trial detainee, he was housed at the Cheshire County Department of Corrections in Westmoreland, New Hampshire.  On August 3, 2001, his cell-mate hit him on the face with a wooden toilet brush, causing permanent injury to his nose.

Espaillat claims that prior to the attack by his cell-mate, he warned county officials that he had been threatened by this person, but was denied a transfer to

---

[2] On March 18, 2005, Espaillat moved for an enlargement of time in which to respond to the motion to dismiss (Paper 11).  The Court granted the motion (Paper 12), but the Order was returned as undeliverable (Paper 14).  On May 25, 2005, the Court issued a second Order granting Espaillat an additional 20 days in which to file a response (Paper 15).  That Order was also returned as undeliverable (Paper 16).

another "pod."  Immediately after he was injured, jail personnel refused to take him to the hospital, allegedly stating that "their contract with the U.S. Marshal Service of Vermont did not allowed [sic] them to take me out to a hospital unless escorted by the Marshals." Espaillat's ultimate claim is that "[d]ue to the lack of proper medical care and negligence of the marshals and county officials, I now suffer permanent injuries to my nose, where I have difficulty breathing through my nose and bleed from it at night when I sleep."  For relief, Espaillat seeks compensatory and punitive damages.

   The USMS has moved to dismiss, and has attached to its motion the Declaration of Dennis Jenkins of the USMS Prisoner Services Division.  (Paper 10-2 at 2-3). Accordingly to Jenkins, the agreement between the USMS and Cheshire County provides that county administrators are responsible for the "subsistence, care, sanitation, on-site medical care, and safekeeping of the prisoners at their facilities, including federal detainees housed at the facility."  Id. at 2.  Attached to the Jenkins Declaration is a copy of the contract between the USMS and Cheshire County, which states that federal prisoners

will be provided "the same level of medical care and services provided by a medical practitioner to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services." Id. at 5.  The contract further provides that the USMS will be notified "as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility," and that "removal for all other medical services" requires prior authorization from the USMS.  Id. at 5-6.

## Discussion

I. Legal Framework

On a motion to dismiss, the Court must read the plaintiff's complaint with generosity.  See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  Taking the allegations in the complaint as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in plaintiff's favor.  See Warth v. Seldin, 422 U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  Moreover, *pro se* complaints are to be construed more liberally than complaints drafted by trained

4

attorneys.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the burden of establishing federal jurisdiction rests with the party asserting that it exists.  See Thomson v. Gaskill, 315 U.S. 442, 446 (1942).  When resolving factual disputes regarding jurisdiction, a court may consider factual information outside of the complaint.  See Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must not dismiss the complaint unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Indeed, there is an important difference between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment.  See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the

claims." Id. (citations and internal quotation marks omitted).

## II. Sovereign Immunity

The USMS first asserts, based upon several distinct arguments, that Espaillat's claims are barred because the USMS is an agency of the United States. The USMS first notes that Espaillat's complaint is styled as an action under 42 U.S.C. § 1983, and that § 1983 only applies to state, and not federal, actors. See Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991). The USMS concedes, however, that the Court might construe the complaint as an action brought under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Indeed, giving Espaillat's *pro se* complaint the liberal reading that is required, his claims will be construed as though brought under Bivens. See Haines, 404 U.S. at 520.

Notwithstanding this construction, however, Espaillat's claims against the USMS are barred. The complaint appears to be comprised of two types of claims: constitutional claims and claims under the Federal Tort Claims Act ("FTCA"). Constitutional claims against the

6

United States or its agencies are barred by sovereign immunity absent a clear waiver by Congress.  See Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983) ("Bivens authorizes suits against the responsible federal official . . . , not against the government itself, and Bivens-type actions against the United States are routinely dismissed for lack of subject matter jurisdiction."); Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Relevant to this case, Congress has not waived the federal government's sovereign immunity in cases alleging direct constitutional violations.  Meyer, 510 U.S. at 477-78.  Therefore, the USMS, as a federal agency, is protected by the government's sovereign immunity, and the constitutional claims against it should be dismissed.  Id. at 483-86 (Bivens does not imply cause of action against the government or its agencies).

With respect to claims under the FTCA, the only proper defendant to an FTCA suit is the United States. 28 U.S.C. § 2679.  The USMS argues that even if Espaillat

were allowed to amend his complaint to name the United States as a party, however, such an amendment would be futile since the FTCA does not waive sovereign immunity for claims based upon the conduct of employees of "any contractor with the United States." (Paper 11 at 8, citing 28 U.S.C. § 2671).

In Logue v. United States, 412 U.S. 521, 527-28 (1973), the Supreme Court determined that when a federal prisoner is transferred to a contracting local jail, the United States may retain its sovereign immunity depending upon "the authority of the [federal government] to control the detailed physical performance of the contractor."  The Court in Logue found that the government did not exert such control over the contracting jail, and therefore could not be held liable for the conduct of its employees.  Id.  The Court specifically noted that when Congress allowed the federal government to contract out for prison services, it "clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the

contractor to do a good job." Id. at 529.

Before the Court considers whether the United States would retain its sovereign immunity in this case, it must decide whether it may consider evidence beyond the complaint, such as the Jenkins Declaration and the attached contract, on a motion to dismiss. In general, motions to dismiss are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. See Fed. R. Civ. P. 12(c). As noted above, however, on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court may consider affidavits, documents and testimony. See Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). A court may also consider documents attached to the complaint or incorporated therein if they are "integral" to the complaint and upon which the complaint relies. See International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995). Courts apply this exception where, as here, a plaintiff sues primarily on the basis of a document, such as a contract, and only attaches selected portions of that document, or

9

fails to attach the document at all.  See id.; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

In this case, the USMS has moved to dismiss for lack of subject matter jurisdiction based upon sovereign immunity, thus making review of external documentation appropriate.  Moreover, the contract between USMS and Espaillat's jailers is "integral" to the complaint, since his legal claims hinge entirely upon his belief that the contract barred him from receiving outside emergency medical care without a USMS escort.  Thus, the documentation submitted by USMS in support of its motion may be considered at this time.

It is clear from the contract and the Jenkins Declaration that control of emergency medical situations was solely in the hands of the local jailers.  As quoted above, the contract requires Cheshire County personnel to provide "the same level of medical care and services provided by a medical practitioner to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services."  (Paper 10-2 at 5).  Furthermore, the contract

10

clearly states that prior authorization by the USMS is only required for non-emergencies, and that in the event of an emergency requiring removal of the prisoner from the jail, the USMS be notified "as soon as possible." Id. at 5-6. Nothing in the contract bars jail employees from taking federal prisoners to a hospital for emergency medical services. In all other respects of inmate care, Cheshire County is generally responsible for the "custody, care and safekeeping" of federal prisoners, with little or no direct control by the USMS.

Because the United States, under the terms of the contract in question, did not "control the detailed physical performance of the contractor" with respect to the provision of medical care or other services to federal prisoners, it would retain its sovereign immunity. See Logue, 412 U.S. at 527-28. Accordingly, amendment of the complaint to name the United States as a party in the FTCA claim would be futile. Because both Espaillat's constitutional and FTCA claims ultimately fail on the basis of sovereign immunity, I recommend that this case be DISMISSED for lack of subject matter jurisdiction. See Dotson v. Griesa, 398 F.3d 156, 177

(2d Cir. 2005) (finding of sovereign immunity deprives court of subject matter jurisdiction).

## Conclusion

For the reasons set forth above, I recommend that the defendant's motion to dismiss (Paper 10) be GRANTED, and that this case be DISMISSED for lack of subject matter jurisdiction.

Dated at Burlington, in the District of Vermont, this 24th day of June, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).